UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONVERGE, INC,

        Plaintiff,                  CASE NO. 04-72235

-vs-                           PAUL D. BORMAN
                               UNITED STATES DISTRICT JUDGE

TOPY CORPORATION,

        Defendant.
_____/

**ORDER (1) APPLYING MICHIGAN LAW; (2) GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are Defendant Topy Corporation's Motion for Summary Judgment and Plaintiff Converge, Inc.'s Motion for Partial Summary Judgment and on Choice of Law.

**BACKGROUND:**

Plaintiff, Converge, Inc. ("Plaintiff"), is a Michigan corporation with its principal offices in Madison Heights, Michigan. Defendant, Topy Corporation ("Defendant"), located in Frankfort, Kentucky, manufactures steel and aluminum wheels for the automotive industry. (Pl.'s Mem. Supp. Part. Summ. J. 1). Plaintiff is a manufacturer's representative company which procures contracts with automobile manufacturers for companies such as Defendant. (*Id.*).

On June 5, 1998, Defendant entered into a Consulting Agreement with Plaintiff. The Agreement called for Plaintiff to be paid $4,000.00 per month for its services in both advising

1

Defendant and assisting Defendant's marketing efforts.  (Def.'s Mem. Supp. Summ. J. Ex. 4 at

1).  Paragraph 1 of the Agreement states:

>  1.  <u>Compensation</u>.  During the term of the Consulting Agreement, the
>  Company shall pay the Consultant four thousand ($4,000.00) dollars
>  per month beginning on the date of this Consulting Agreement.
>  However, in the event that this Consulting Agreement is terminated
>  prior to the end of any such one month period, such fee shall be pro-
>  rated on a per diem basis and the Consultant will refund to the
>  Manufacturer all amounts applicable to the period following the
>  effective date of termination.  The Consultant will not be responsible
>  for all expenses incurred by the Consultant in performing services
>  under the Consulting Agreement and will not be entitled to be
>  reimbursed by the Manufacturer for expenses of any type.  **While
>  it is intended that the foregoing will constitute the sole and exclusive
>  receipts by Consultant with respect to services rendered under this
>  Consulting Agreement or otherwise by Consultant or Manufacturer,
>  if Manufacturer enters into a contract with Chrysler during the term
>  of this Consulting Agreement to supply Chrysler with Manufacturer's
>  products (as a result of contacts made by Consultant with
>  Manufacturer's prior consent) Manufacturer will enter into an
>  agreement with Consultant to pay Consultant a fee in such amount
>  as Manufacturer and Consultant agree.**

(Consulting Agreement, Def.'s Mem. Supp. Summ. J. Ex. 4, ¶ 1) (emphasis added).  On

February 1, 2000, the parties executed an addendum to include Ford Motor Company as well as

Chrysler under this compensation provision.  (Pl.'s Compl., Ex. 2) (with Consulting Agreement,

collectively "the Agreement").  Defendant subsequently entered into sales contracts with both

Chrysler and Ford Motor Company.  Plaintiff and Defendant did not enter into an agreement to

pay Plaintiff a fee with regard to its supply contracts between Defendant and Ford and Chrysler.

On June 16, 2004, Plaintiff filed its Complaint, alleging breach of contract, estoppel, and

*quantum meruit*.  Plaintiff filed its Motion for Partial Summary Judgment on July 26, 2005.

Defendant filed its Motion for Summary Judgment on July 28, 2005.

The bolded portion of Paragraph 1 represents the center of the dispute between the

2

parties.  Defendant asserts that the $4,000 monthly stipend for consulting is all that Defendant

owes or has ever owed to Plaintiff.  Plaintiff counters that the second portion of the agreement

recognizes that Plaintiff will be owed additional compensation should its sales solicitation

endeavors with Ford and Chrysler result in a contract between those automakers and Defendant.

(Pl.'s Resp. 2).

## ANALYSIS

### A.    Standard of Review

The Court reviews Plaintiff's and Defendant's Motion for Summary Judgment under

Federal Rule of Civil Procedure 56.  Pursuant to Federal Rule of Civil Procedure 56, a party

against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or

without supporting affidavits, for a summary judgment in the party's favor as to all or any part

thereof."  Fed. R. Civ. P. 56(b).  Summary judgment is appropriate where the moving party

demonstrates that there is no genuine issue of material fact as to the existence of an essential

element of the nonmoving party's case on which the nonmoving party would bear the burden of

proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that

fact "would have [the] effect of establishing or refuting one of the essential elements of a cause

of action or defense asserted by the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.

3

1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

### B.      Acceptance of Supplemental Response

Plaintiff filed a supplemental response to Defendant's Motion for Summary Judgment, citing the case of *Linsell v. Applied Handling, Inc.*, 266 Mich. App. 1 (2005). The Court accepts supplemental citations to *Linell* but not supplemental briefs.

4

C.     Choice of Law Provision in Contract

The contract at issue contains a clause which expressly states that Kentucky law is to apply to any disputes over its proper interpretation.  Thus, Defendant argues that Kentucky law should apply to its dispute.  Plaintiff argues that while the result would be the same under either Michigan or Kentucky law, Michigan law should apply to its entire claim.  Alternatively, Plaintiff contends that the Court should at least apply Michigan law to its claim in *quantum meruit* because it is not governed by the choice of law clause in the parties' contract.

The central dispute in this case is whether a contract for the additional compensation existed at all.  Thus, the choice of law provision in the contract is not applicable.  This means that the parties have not agreed to a contractual choice of law provision as to the *quantum meruit* claim.  *See Detroit Tigers, Inc. v. Ignite Sports Media, LLC*, 203 F. Supp. 2d 789, 794 (E.D. Mich. 2002); *R & D Distrib. Corp. v. Health-Mor Indus.*, 118 F. Supp. 2d 806, 808 (E.D. Mich. 2000) ("[T]he parties disagree about whether a contract . . . existed at all. . . . The Court concludes, therefore, that the parties have not chosen another state's law to govern their contract.").

Generally, a district court sitting in diversity follows the substantive law of the state in which the district court sits, including its choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Therefore, the Court must look to Michigan choice of law provisions.  As the Michigan Supreme Court has stated, "the rigid 'law of the place of contracting' approach has become outmoded in resolving contract conflicts." *Chrysler Corp. v. Skyline Indus. Servs.*, 448 Mich. 113, 124 (Mich. 1995).  Rather, where there is no effective choice of law provision chosen by the parties, Michigan courts follow § 188 of the Restatement

2d Conflict of Laws, entitled "Law Governing in Absence of Effective Choice by the Parties,"

which provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
>
> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>> (a) the place of contracting,
>> (b) the place of negotiation of the contract,
>> (c) the place of performance,
>> (d) the location of the subject matter of the contract, and
>> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Restatement 2d of Conflicts, § 188.  Here, although Kentucky is the state where Defendant and

its production facilities are located, Plaintiff's performance took place in Michigan, and

Defendant received contracts from automakers also located in Michigan.  Therefore, the Court

finds that Michigan law applies to this dispute.

### D.    *Quantum Meruit* vs. Breach of Contract

Defendant claims that it owes nothing to Plaintiff beyond what is expressly stated in the

agreement between the parties.  While the Court agrees with Defendant's statement, the outcome

of such a finding does not resolve this case.   Contrary to Defendant's assertion, Paragraph 1 of

the Agreement specifically contemplated that Defendant would owe further compensation to

6

Plaintiff in the event that Defendant secured a contract with Ford or Chrysler.  That contingent

situation was realized when Defendant eventually obtained contracts with both Ford and

Chrysler.  Because the Agreement states that the additional compensation will be an amount

agreed to by both parties, and the parties here did not agree, Defendant argues that it was

relieved of making any additional payment to Plaintiff.

      Michigan law  recognizes that parties may enter into an enforceable contract that requires

them to execute another contract at a later date. *Opdyke Inv. Co. v. Norris Grain Co.*, 413 Mich.

354, 359 (1982); *Prof'l Facilities Corp. v. Marks*, 373 Mich. 673, 131 N.W.2d 60, 63 (Mich.

1964); *Hansen v. Catsman*, 371 Mich. 79, 123 N.W.2d 265, 266 (Mich. 1963). However, a

contract that requires the execution of a future agreement will "fail for indefiniteness if the trier

of fact finds that it does not include an essential term to be incorporated into the final contract."

*Opdyke Inv. Co.*, 413 Mich. at 359 (Mich. 1982) (citing *Socony-Vacuum Oil Co. v. Waldo*, 289

Mich. 316, 323 (1939).  The Michigan Supreme Court has said:

> It is well recognized that it is possible for parties to make an enforceable
> contract binding them to prepare and execute a subsequent agreement.
> In such a case, where agreement is expressed on all essential terms, the
> instrument is considered a contract, and is considered a mere memorial
> of the agreement already reached. 1 Corbin, Contracts, § 29. It is further
> to be noted, however, that "**[i]f the document or contract that the parties
> agree to make is to contain any material term that is not already agreed
> on, no contract has yet been made; and the so-called 'contract to make
> a contract' is not a contract at all.**" Corbin, *supra*, p 68. *See also,* 6 MLP,
> Contracts, § 27.

*Hansen v. Catsman*, 371 Mich. at 82 (emphasis added).   The Sixth Circuit has noted that

"[w]here an agreement leaves the resolution of material terms to future negotiations, the

agreement is generally unenforceable for indefiniteness unless a standard is supplied from which

the court can supplant the open terms should negotiations fail."  *Poundstone v. DEW Res., Inc.*,

75 Fed. Appx. 353, 364 (6th Cir. 2003) (unpublished) (citing *Cinelli v. Ward*, 997 S.W.2d 474, 477 (Ky. 1998)).

Here, the contract specifies only that the fee is to be "in such amount as Manufacturer and Consultant agree." Because this clause constitutes an "agreement to agree," the Court finds that the parties never formed a contract to pay Plaintiff for the procurement of contracts.

However, the case does not end there. The equitable doctrine of *quantum meruit* "requires a defendant to pay a plaintiff the reasonable value of services performed for the defendant even though [t]here was no contract to do so." *United States v. Snider*, 779 F.2d 1151, 1159 (6th Cir. 1985). While Michigan law "forbids a [*quantum meruit*] recovery where an express contract covers the subject matter," *United States v. Palmer Smith Co.*, 679 F. Supp. 641, 646 (E.D. Mich. 1987), this rule only applies if the parties are *bound* by an express contract. *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 939 (6th Cir. 1989) ("A quasi-contractual theory of recovery is inapplicable when the parties are bound by an express contract."); *see also Biagini v. Mocnik*, 369 Mich. 657, 658-60 (1963) (affirming trial court's decision to allow amendment of a breach of contract complaint to state a claim for quantum meruit once the trial court found that there was no meeting of the minds and, thus, no express contract).

Here, while the parties were not bound by an express contract with respect to the disputed clause in the Agreement, Defendant cannot deny the agreement's express recognition that Plaintiff would receive further compensation if it helped Defendant obtain future contracts. The entire essence of this consulting agreement anticipated the fruition of these contacts into contracts. In addition, Defendant included in its exhibits attached to its motion an e-mail from

8

Dave Gonda and Dave Fisher, Plaintiff's principals, in which they explicitly state "[a]s you may recall, our contract calls for a separate agreement to be established once a resulting production order is placed, and "[w]e will need to establish this additional consulting or commission agreement."  (Def.'s Mem. Supp. Summ. J. Ex. 6).  An e-mail from Mr. Okamoto, written to Dave Gonda, confirms the parties understanding with respect to the payment of commissions:

> 1. Products we will pay commission
>
> As advised in the previous mails, commission payable should be on wheels as follows:
>
> Ford: Wheels for P221 and E285 (Ford Australia) programs
> [Chrysler]: Wheels for "LX" and "RS" programs
>
> Any other programs for Ford& [Chrysler]: Only on programs as a result of contacts made by Converge with Topy's prior consent.
>
> 2. Commission rate: 0.5% on sales for the above products as you agreed per your e-mail of 5/22/03.  Commission will be payable to Converge upon receipt of payment from Ford or [Chrysler].
> . . .
>
> 4. The reason why we entered into the Consultant Agreement in June 1998 was that we understood it will take a couple of years to generate some businesses and we wanted to support some of your expenses until you start receiving commissions.  Therefore, we no longer have the intention to keep the Consultant Agreement upon entering a Sales Rep. Agreement.

(Pl.'s Resp. Ex. E).  Under these circumstances, the lack of an additional agreement on compensation terms will not excuse Defendant from any and all obligation to compensate Plaintiff for its work on Defendant's behalf.   Accordingly, the Court finds that Plaintiff's claim in *quantum meruit* survives Defendant's Motion for Summary Judgment.

### E.      Estoppel

Defendant argues that summary judgment should be granted on Plaintiff's estoppel claim

because Plaintiff has not shown how it relied to its detriment on Defendant's promise to pay the fee. "Promissory estoppel arises in equity when (1) there is a promise (2) that the promisor should have reasonably expected to induce action of a definite and substantial character on the part of the promisee (3) which in fact produces reliance or forbearance of that nature (4) under circumstances such that the promise must be enforced if injustice is to be avoided." *Barber v. SMH (US)*, 202 Mich. App. 366, 375-76 (1993).

Here, Plaintiff has alleged that Defendant signed a contract with language indicating that further payment would be forthcoming if Plaintiff procured the contracts, which induced Plaintiff to believe that it would be paid for its procurement work, and Plaintiff relied upon this eventual payment when it labored to obtain contracts with Ford and Chrysler. As the Court has found that Plaintiff does not have a breach of contract claim, Plaintiff still has a valid claim for promissory estoppel, and a jury question exists as to Defendant's liability for this claim. Therefore, Defendant's Motion for Summary Judgment on Count II (Estoppel) is denied.

## CONCLUSION:

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment on Count I (Breach of Contract), DENIES Defendant's Motion for Summary Judgment on Count II (Estoppel), and DENIES Defendant's Motion for Summary Judgment on Count III (*Quantum Meruit*). The Court further ORDERS that Michigan law applies to Plaintiff's claim.

10

Plaintiff's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**


**s/Paul D. Borman**
**PAUL D. BORMAN**
**UNITED STATES DISTRICT JUDGE**

**Dated:  December 14, 2005**

**CERTIFICATE OF SERVICE**

**Copies of this Order were served on the attorneys of record by electronic means or U.S.
Mail on December 14, 2005.**


**s/Jonie Parker**
**Case Manager**

11